UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

                   Plaintiff,

   -against-

NAFEESAH H. HINES, individually
and d/b/a CLEAR VISION FINANCIAL
SOLUTIONS, and RODNEY N.
CHESTNUT,

                Defendants.
----------------------------------X

**MEMORANDUM AND ORDER**

11-CV-05080 (KAM)(MDG)

**KIYO A. MATSUMOTO**, United States District Judge:

       Plaintiff United States of America (the "government")
objects to the protective order issued by Magistrate Judge
Marilyn D. Go on July 20, 2012, which prohibits the government
from using any discovery obtained in this civil action against
the defendants in another proceeding, including criminal
proceedings, other than for impeachment purposes or in
connection with a perjury prosecution arising out of defendants'
deposition testimony.  (*See* ECF No. 19, Order dated July 20,
2012 at 9-10 (the "Discovery Order")); *United States v. Hines*,
No. CV 2011 5080, 2012 U.S. Dist. LEXIS 101236, at *12 (E.D.N.Y.
July 20, 2012).  Having reviewed the parties' submissions, the
relevant case law, and the record before the court, for the
reasons set forth below, the court sustains the government's
objections in part and respectfully refers the case back to

Magistrate Judge Go for further proceedings and supervision of discovery.

<u>**BACKGROUND**</u>

The facts relevant to the present request for review are as follows.  On October 19, 2011, the government commenced this action alleging that the *pro se* defendants implemented and promoted a tax fraud scheme known as "redemption" or "commercial redemption" by helping customers file frivolous tax returns and other bogus forms with the Internal Revenue Service ("IRS") in order to steal from the U.S. Treasury.  (*See* ECF No. 1, Complaint ("Compl.") ¶ 7.)[1]  Specifically, pursuant to 26 U.S.C. §§ 7407 and 7408, the government seeks to permanently enjoin defendants from, *inter alia*, (1) organizing, implementing, promoting, or selling any plan or arrangement that advises or assists others to violate the internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities; (2) preparing or filing federal tax returns or forms for anyone other than themselves; and (3) advising or assisting others with respect to federal tax matters or forms. (*Id.* at 1.)

---

[1] On September 6, 2012, defendants filed a notice "informing the court and opposing counsel that they each, respectively, are presenting all court papers *in propia persona*, in their own proper person, and NOT *pro se*." (ECF No. 24, Notice of *In Propia Persona* Status.)  Nevertheless, because it appears from the record (*see* Compl. ¶¶ 5-6) and a search of the New York State Unified Court System's website that the defendants are not attorneys, let alone licensed attorneys in New York, the court deems them to be proceeding *pro se*.

The parties engaged in settlement discussions, and at a conference on February 29, 2012, Magistrate Judge Go ordered that discovery be completed by August 31, 2012 and limited such discovery to be against third parties absent leave to serve discovery on the defendants.  (Discovery Order at 2.)  On April 11, 2012, the government advised the court that there is an open criminal investigation of both defendants that is related to the allegations at issue in this action.  (*See* ECF No. 11.)  On March 5 and May 14, 2012, the government filed motions seeking leave to serve written discovery requests and deposition notices on the defendants.  The written discovery sought by the government consisted of document requests and interrogatories concerning copies of tax returns prepared by or submitted by the defendants, correspondence drafted by the defendants to the IRS, and a list of the individuals for whom defendants prepared tax returns.  (Discovery Order at 7.)

In the Discovery Order dated July 20, 2012, Magistrate Judge Go granted the government's motion for discovery, denied a stay of the case during the pendency of the related criminal investigation of defendants, and imposed the following protective order pursuant to Federal Rule of Civil Procedure 26(c) (the "Protective Order"):

> [T]he discovery obtained in this action may be used
> solely for purposes of this litigation and may not be
> shown, distributed or disseminated to any other person

3

or otherwise used for any purpose other than for
impeachment purposes in another proceeding or in
connection with a perjury prosecution arising out of
the defendants' deposition testimony.  However, the
government may use information derived from this
action against other individuals or entities in any
other proceeding.

(Discovery Order at 9-10).  In imposing the Protective Order,

Magistrate Judge Go recognized that "the court should make an

accommodation to 'further the goal of permitting as much

testimony as possible to be presented in the civil litigation,

despite the assertion of privilege,'" and further reasoned that

"[t]his accommodation will minimize the prejudice to defendants

by having to choose between risking an adverse inference being

drawn against them in this action and waiving their Fifth

Amendment rights."  (*Id.* at 9-10 (quoting *U.S. v. Certain Real

Property and Premises Known as 4003-4005 5th Ave.*, 55 F.3d 78,

83-84 (2d Cir. 1995) [hereinafter *4003-4005 5th Ave.*]).)

On August 6, 2012, the government filed an objection

pursuant to Federal Rule of Civil Procedure 72(a) to only that

portion of the July 20, 2012 Discovery Order imposing the

Protective Order.  (*See* ECF No. 22, Government's Memorandum

Objecting to the July 20, 2012 Magistrate Order ("Gov't Mem.") at

1.)  On August 21, 2012, the defendants responded to the

government's objection, and did not raise any of their own

objections to the Discovery Order.  (*See* ECF No. 23, Defendants'

Affidavit of Reply to Plaintiff's Objection ("Defs. Resp.").)[2]
Because the only portion of the Discovery Order that has been
objected to is the Protective Order, the court will not address
any other portion of the Discovery Order.

<u>**DISCUSSION**</u>

**I.   Standard of Review**

A district court may set aside a magistrate judge's
order concerning non-dispositive matters only if the order is
"clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a);
*accord* 28 U.S.C. § 636(b)(1)(A).  A magistrate judge's pretrial
discovery rulings are generally considered non-dispositive and
are reviewed under the "clearly erroneous or contrary to law"
standard of review.  *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*,
900 F.2d 522, 525 (2d Cir. 1990).  An order is clearly erroneous
if the reviewing court, based on all the evidence, "'is left
with the definite and firm conviction that a mistake has been
committed.'"  *United States v. Isiofia*, 370 F.3d 226, 232 (2d
Cir. 2004) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573
(1985)).  An order is contrary to law "'when it fails to apply
or misapplies relevant statutes, case law, or rules of
procedure.'"  *Dorsett v. Cnty. of Nassau*, 800 F. Supp. 2d 453,

_____

[2] The *pro se* defendants do not present any arguments relating to
the Protective Order in their response to the government's objection, but
rather again challenge the subject matter jurisdiction of this court, a
challenge that Magistrate Judge Go has adequately and, upon this court's
review, correctly addressed and rejected.  (*See* Discovery Order at 2-4.)

456 (E.D.N.Y. 2011) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)).

"'Pursuant to this highly deferential standard of review, magistrate[] [judges] are afforded broad discretion in resolving discovery disputes and reversal is appropriate only if their discretion is abused.'" *Dunkin' Donuts Franchised Rests., LLC v. 1700 Church Ave. Corp.*, No. 07-CV-2446, 2009 U.S. Dist. LEXIS 24367, at *3 (E.D.N.Y. Mar. 24, 2009) (quoting *Botta v. Barnhart*, 475 F. Supp. 2d 174, 185 (E.D.N.Y. 2007)). "Thus, a party seeking to overturn a discovery ruling by a magistrate judge generally bears a heavy burden." *Travel Sentry, Inc. v. Tropp*, 669 F. Supp. 2d 279, 283 (E.D.N.Y. 2009) (internal quotation marks omitted) (brackets omitted).

## II.   Application

This discovery appeal presents an interesting issue at the intersection of a court's power to issue a protective order prohibiting the use of discovery obtained in a civil litigation in other proceedings, and a party's constitutional right to assert the Fifth Amendment privilege against self-incrimination in a civil enforcement action brought by the government.  First, under Federal Rule of Civil Procedure 26(c)(1)(B), a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" that "specif[ies] terms . . . for the disclosure or

6

discovery." Second, "there is no question that an individual is entitled to invoke the privilege against self-incrimination during a civil proceeding . . . [a]nd this means that a civil litigant may legitimately use the Fifth Amendment to avoid having to answer inquiries during any phase of the discovery process." *4003-4005 5th Ave.*, 55 F.3d at 82 (citations omitted). If a defendant in a civil proceeding chooses to invoke the Fifth Amendment as a result of an overlapping criminal investigation, such defendant risks an adverse inference from his assertion of the privilege. *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97-98 (2d Cir. 2012).

In a civil enforcement action like the case against defendants brought by the government, the defendants face a dilemma: remain silent and allow the injunction to be entered against them or testify in their defense and expose themselves to criminally incriminating admissions. *See 4003-4005 5th Ave.*, 55 F.3d at 83; *Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 578 (S.D.N.Y. 2001) ("There is no question that any defendant facing parallel criminal and civil litigation is hard put to decide whether to waive the privilege and give potentially damaging testimony or to assert it at the risk of having a Court or jury draw adverse inferences against him in the civil case."). The injunction at issue sought by the

government here does not simply enjoin the defendants from engaging in illegal conduct, but it also seeks to enjoin them from preparing or filing federal tax returns for any person or entity other than themselves and advising or assisting others with respect to federal tax matters or forms. (*See* Compl. at 1, 14-15.)  As defendants presumably rely on their work involving federal tax matters for their livelihood, defendants have a significant stake in defending this lawsuit.

In dealing with the invocation of the Fifth Amendment in the similar context of a civil forfeiture action brought by the government while a parallel criminal investigation or case is also pending or may be pending, the Second Circuit has recognized:

> [D]istrict courts should make special efforts to accommodate both the constitutional [privilege] against self-incrimination as well as the legislative intent behind the forfeiture provision.  And, in so doing, trial courts should not disregard the fact that the plaintiff in forfeiture actions is the Government, which controls parallel criminal proceedings in federal court and also possesses the power to grant some forms of immunity.

*4003-4005 5th Ave.*, 55 F.3d at 83 (citations omitted) (internal quotation marks omitted) (citing *SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 193-94 (3d Cir. 1994) ("Courts must bear in mind that when the government is a party in a civil case and also controls the decision as to whether criminal proceedings will be initiated, special consideration must be given to the plight of

the party asserting the Fifth Amendment.")).  "[H]ow [a trial court] should react to any motion precipitated by a litigant's assertion of the Fifth Amendment in a civil proceeding -- necessarily depends on the precise facts and circumstances of each case."  *Id.* at 85.

The Second Circuit has stated that the fact that the government is a party to a civil action does not necessarily require a court to stay the action during a parallel criminal proceeding or enter a protective order keeping a defendant's testimony from being used in any other proceeding, but that courts "must explore the feasibility and fairness of accommodations of this sort."  *Id.* at 83 & n.4; *see also Madanes v. Madanes*, 186 F.R.D. 279, 287 (S.D.N.Y. 1999) ("One means of accommodation is an order shielding discovery from disclosure to third parties.").  Stated differently, the Second Circuit has explicitly counseled courts to consider orders such as the Protective Order as an accommodation to defendants that are entitled to assert their Fifth Amendment rights in a civil lawsuit involving the government.  With this legal background in mind, the court will now address each of the government's objections to the Protective Order.

## A.   Whether the Protective Order Impermissibly Grants De Facto Use Immunity

The government first argues that the Protective Order "exceeds Judicial Branch powers and . . . impermissibly grants defendants de facto use immunity . . . ." (Gov't Mem. at 5.) Essentially, the government is asking this court to categorically find that protective orders prohibiting the use of discovery obtained in a civil action in other proceedings violate the separation of powers between the executive and judicial branches of government. (*See id.*)

In making this argument, the government relies on the Second Circuit's decision in *Andover Data Servs. v. Statistical Tabulating Corp.*, 876 F.2d 1080 (2d Cir. 1989). In that case, a third party witness refused to answer questions at a deposition in a civil case on the ground that he might incriminate himself in violation of his Fifth Amendment rights, and the district court compelled his testimony pursuant to a Rule 26(c) protective order that limited access to his testimony and imposed non-disclosure obligations on all persons with knowledge of or possession of the testimony. *Id.* at 1081-82. The Second Circuit, however, concluded that, unlike a statutory grant of use immunity by prosecutors, "the protections afforded by a Rule 26(c) order are *not* as extensive as those afforded by the fifth amendment" because such an order may be overturned or modified

10

and "provides no guarantee that compelled testimony will not somehow find its way into the government's hands for use in a subsequent criminal prosecution." *Id.* at 1083.  Thus, the Second Circuit held that a non-consenting witness, who otherwise would be entitled to invoke the Fifth Amendment privilege, "may not be forced to answer potentially incriminating questions in reliance upon such an order, no matter how carefully crafted the order may be."  *Id.* at 1084.

Although the Second Circuit recognized that "the district court's use of a Rule 26(c) protective order in this manner . . . raises serious separation of powers issues" and that using a protective order to compel testimony "might very well amount to an impermissible 'de facto' grant of immunity" by a court, the Second Circuit explicitly declined to reach that issue – nor has it since reached that issue - after holding that Rule 26(c) protective orders cannot be used to overcome a witness's Fifth Amendment rights.  *Id.* at 1084.  Moreover, the Second Circuit also stated that its holding "is in no way intended to abrogate the *Martindell* line of cases, wherein we have upheld the use of protective orders limiting disclosure of potentially incriminating testimony where parties have *voluntarily* consented to testify in civil cases in reliance upon

such protective orders."  *Id.* (referencing *Martindell v.
International Tel. & Tel. Corp.*, 594 F.2d 291 (2d Cir. 1979)).[3]

　　　　Magistrate Judge Go has not compelled the testimony of
the defendants pursuant to the Protective Order, and as the
government stated in its objection, the *pro se* defendants have
not yet made any assertion of their Fifth Amendment rights in
this case.  (Gov't Mem. at 5 n.2.)  Indeed, the defendants are
still entitled to refuse to answer any inquiries from the
government during discovery on Fifth Amendment grounds if they
wish to do so.  Accordingly, Magistrate Judge Go did not clearly
err in issuing the Protective Order because it is not an
impermissible grant of use immunity as suggested by *Andover
Data*.  Furthermore, the court cannot find that the Protective
Order is contrary to law as a violation of the separation of
powers between the executive and judicial branches where the
Second Circuit has upheld the use of similar protective orders
in other cases.  *See Andover Data Serv.*, 876 F.2d at 1084
(citing the *Martindell* line of cases).

　　　　The government also relies on a district court case
outside the Second Circuit, *United States v. Payment Processing
Ctr.*, 443 F. Supp. 2d 728 (E.D. Pa. 2006), for its position that

---

[3]  In *Martindell*, the Second Circuit "established a strong presumption
against access to sealed documents when there was reasonable reliance on a
previously granted protective order, absent extraordinary circumstances or a
compelling need."  *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 n.7 (2d
Cir. 2004).

the Protective Order impermissibly constitutes a de facto grant
of immunity and improperly impedes the government's criminal
investigation and possible criminal prosecution.  (Gov't Mem. at
6-9.)  Although the court in *Payment Processing* denied a
protective order barring the government from using defendants'
testimony in a civil enforcement action brought pursuant to 18
U.S.C. § 1345 in a criminal proceeding, a majority of the
decision discussed why it was improper for the court to compel
the government to immunize the defendants.  *Payment Processing
Ctr.*, 443 F. Supp. 2d at 731-35.  The court in *Payment
Processing*, however, did recognize the Second Circuit's decision
in *4003-4005 5th Ave.*, 55 F.3d 78, as a case "in which courts
crafted procedures, such as protective orders, to accommodate
defendants who sought to exercise their Fifth Amendment rights."
*Payment Processing Ctr.*, 443 F. Supp. 2d at 734.

As previously discussed, Magistrate Judge Go did not
compel the government to immunize the defendants, but has only
entered a protective order limiting the use against the
defendants of any discovery obtained to this litigation.  Even
if the government had a burden pursuant to *Kastigar v. United
States*, 406 U.S. 441 (1972), of showing that any discovery it
obtained in this case was not the source of any evidence it

presented in a subsequent criminal case,[4] the government provides
only conclusory allegations that such a requirement "could
significantly jeopardize a possible criminal prosecution of
defendants" and that "the obstacles posed in any possible
criminal prosecution will be substantial."  (Gov't Mem. at 9.)
Indeed, because the government opposed a stay and chose to
proceed with discovery in this case while its criminal
investigation is pending, it cannot now complain that it would
face substantial obstacles in proving its criminal case if
discovery in this case is not permitted to be used in the
criminal case.  (*See* ECF No. 14, Memorandum of Law in Support of
United States' Motion for Discovery at 4-9 ("Gov't Disc. Mot.")
(arguing against a stay of this case).)

> **B.    Whether the Protective Order Impermissibly Forces the
> Government to Choose Between Civil and Criminal
> Enforcement Obligations**

The government argues that the Supreme Court has
affirmed the propriety of parallel civil and criminal
proceedings, and that the Protective Order "could potentially
require the government" to make the choice between proceeding

---

[4]    In *Kastigar*, the Supreme Court held that, where a defendant
accorded immunity under 18 U.S.C. § 6002 is compelled to testify and is
subsequently prosecuted, the government has "the affirmative duty to prove
that the evidence it proposes to use is derived from a legitimate source
wholly independent of the compelled testimony."  406 U.S. at 460; *see also* 18
U.S.C. § 6002 ("[N]o testimony or other information compelled . . . (or any
information directly or indirectly derived from such testimony or other
information) may be used against the witness in any criminal case, except a
prosecution for perjury, giving a false statement, or otherwise failing to
comply with the order.").

first with a civil case that risks impeding a possible criminal prosecution or deferring civil proceedings pending the outcome of a criminal case.  (Gov't Mem. at 10-11 (citing *United States v. Kordel*, 397 U.S. 1, 11 (1970)).)  As discussed previously, the government has not adequately demonstrated that the Protective Order compromises a future criminal prosecution due to the possibility of a *Kastigar* evidentiary burden.  Additionally, the fact that the government may bring parallel civil and criminal proceedings does not mean that it is entitled to parallel proceedings without any restrictions on its use of discovery from the civil action in the criminal action, particularly where there are special circumstances present, like here, such as defendants proceeding without counsel.  *See Kordel*, 397 U.S. at 12.

        The government also argues that the dilemma faced by the defendants here – whether to testify and risk admissions of criminal conduct or invoke the Fifth Amendment and risk an adverse inference  - is "one that every defendant in a civil case must face when the conduct at issue potentially implicates criminal conduct."  (Gov't Mem. at 9.)  Although the Second Circuit has recognized that "[a] defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege," the Second Circuit emphasized that "[t]he existence of a civil defendant's Fifth

15

Amendment right arising out of a related criminal proceeding thus does not strip the court in the civil action of its broad discretion to manage its docket" by issuing or denying a stay of the civil case. *Louis Vuitton Malletier S.A.*, 676 F.3d at 98-99. In other words, the Fifth Amendment dilemma faced by a defendant does not require a court to stay a civil case during a pending criminal investigation, *see id.*, nor does the fact that the government is a party to a civil case require a court to issue a protective order shielding the use of discovery in other proceedings, *4003-4005 5th Ave.*, 55 F.3d at 84 n.4. Nevertheless, courts "must explore the feasibility and fairness of accommodations of this sort," even if such accommodations would curtail the government's ability to bring parallel civil and criminal proceedings against the same defendant. *See id.*

Accordingly, the fact that it is not unconstitutional to force a civil defendant to choose between testifying and invoking his Fifth Amendment rights does not mean that a protective order such as one issued here cannot satisfy the "good cause" requirement of Rule 26(c), particularly in light of the "special efforts" courts should make to accommodate the privilege against self-incrimination in civil enforcement

actions brought by the government.  *See id.* at 83.[5]  Magistrate Judge Go thus did not clearly err in granting the Protective Order despite the potential burden it may place on the government's ability to bring parallel civil and criminal proceedings, nor is the Protective Order contrary to law on this basis.

**C.  Whether the Protective Order Was Improvidently Granted**

The government finally argues that the Protective Order was improvidently granted because it "exceeds the authority of the Judicial Branch" and is overbroad.  (Gov't Mem. at 11-14.)

As discussed previously, the Protective Order does not violate the separation of powers between the executive and judicial branches because it does not constitute a de facto grant of use immunity that can overcome the Fifth Amendment. *See supra* at 10-14.  With respect to the *Martindell* line of cases previously referenced, the government has conceded that "the Second Circuit has recognized the appropriateness, in certain circumstances, of protective orders issued under Rule 26(c) to prevent the government from using incriminating testimony from a civil action in a related criminal proceeding."

---

[5]  The cases cited by the government in support of its position on this issue, *United States v. Talco Contractors, Inc.*, 153 F.R.D. 501 (W.D.N.Y. 1994) and *United States v. District Council*, No. 90 Civ. 5722 (CSH), 1992 U.S. Dist. LEXIS 11201 (S.D.N.Y. July 30, 1992), were decided prior to the Second Circuit's decision in *4003-4005 5th Ave.*, 55 F.3d 78, and thus are not persuasive.

(Gov't Mem. at 11.)  The government, however, is also correct that those cases - which are relied upon by Magistrate Judge Go (Discovery Order at 11) - upheld protective orders voluntarily entered into by private parties in a civil action against non-party government authorities seeking to obtain discovery or settlement materials disclosed or created in reliance on the protective orders.  *See Minpeco S.A. v. Conticommodity Serv., Inc.*, 832 F.2d 739, 742-43 (2d Cir. 1987) (affirming denial of a modification of a protective order sought by non-party Commodity Futures Trading Commission to access discovery materials); *Palmieri v. New York*, 779 F.2d 861, 864-66 (2d Cir. 1985) (remanding to the district court for a determination of whether non-party New York State has shown "improvidence," "extraordinary circumstances," or "compelling need" to modify sealing orders to allow disclosure of settlement negotiations and terms); *Martindell*, 594 F.2d at 292 (affirming denial of access to non-party United States of deposition testimony given in reliance on protective order).

    In contrast, here, of course, the government is a party to the civil lawsuit and no discovery has yet been provided by the defendants in reliance on the Protective Order. Although the *Martindell* line of cases can be distinguished on these bases, those cases were decided before the Second Circuit's decision in *4003-4005 5th Ave.*, which recognized that

Fifth Amendment concerns are heightened in civil cases brought by the government and required courts to "explore the feasibility and fairness of accommodations" such as the Protective Order at issue here.  55 F.3d at 82-84 & n.4.  In determining how to fashion an appropriate accommodation, the Second Circuit in *4003-4005 5th Ave.* instructed courts to (1) "seek out those ways that further the goal of permitting as much testimony as possible to be presented in the civil litigation, despite the assertion of the privilege," (2) "explore all possible measures in order to select that means which strikes a fair balance . . . and . . . accommodates both parties," and (3) "give due consideration to the nature of the proceeding, how and when the privilege was invoked, and the potential for harm or prejudice to opposing parties."  *Id.* at 84 (internal quotation marks omitted).

In the Discovery Order, Magistrate Judge Go considered the appropriateness of staying the civil action pending the outcome of the criminal investigation and the Protective Order as possible accommodations to protect the *pro se* defendants' rights.  After determining that a stay should not be granted, Magistrate Judge Go issued the Protective Order to "minimize the prejudice to defendants by having to choose between risking an adverse inference being drawn against them in this action and waiving their Fifth Amendment rights."  (Discovery Order at 10.)

Based on the Second Circuit's decision in *4003-4005 5th Ave.*, the court finds that Magistrate Judge Go did not clearly err in *sua sponte* considering the Protective Order as a possible accommodation and issuing it to minimize the prejudice to *pro se* defendants from choosing between an adverse inference or incriminating themselves in the pending criminal investigation - a dilemma that is difficult for any defendant let alone defendants proceeding *pro se.*[6] Considering the nature of the proceeding, the civil action here seeks to permanently enjoin the defendants from, *inter alia*, promoting and implementing an alleged tax fraud scheme that may subject them to criminal liability. The defendants' deposition testimony and answers to interrogatories in this action could thus very well incriminate them in a criminal case because both arise from the same factual nucleus. Moreover, the denial of a stay and the issuance of the Protective Order facilitate the giving of testimony and strike a fair balance between the parties by allowing the civil action to go forward while at the same time accommodating the defendants' rights by permitting them to

---

[6] In *Greystone Nash*, the Third Circuit recognized the difficult predicament of *pro se* defendants facing the choice of whether to invoke or waive the Fifth Amendment privilege against self-incrimination in a civil enforcement action brought by the government. 25 F.3d at 193 ("The decision to invoke or waive the Fifth Amendment is not always self-evident, and it requires serious consideration of the consequences. Counselling [sic] by a lawyer familiar with the ramifications of a particular case and the intricacies of the law in this area is highly desirable, but here defendants proceeded without the benefit of such carefully considered advice.").

present evidence in their defense without having that evidence incriminate them in a subsequent criminal prosecution.

The court finds, however, that the Protective Order is contrary to law in two respects. First, there is no evidence in the record that the *pro se* defendants have yet asserted their Fifth Amendment rights against self-incrimination in this case or intend to do so (*see* Gov't Mem. at 5 n.2), and thus it was premature for Magistrate Judge Go to issue the Protective Order without considering "how and when the privilege was invoked." *4003-4005 5th Ave.*, 55 F.3d at 84. If the defendants decide to assert their Fifth Amendment rights and risk an adverse inference despite the issuance of the Protective Order, the Protective Order would not "further the goal of permitting as much testimony as possible to be presented" and it would thus not be appropriate to shield whatever discovery the government is able to obtain from use in other proceedings. *Id.* On the other hand, if the defendants would have asserted their Fifth Amendment privilege but voluntarily testify in reliance on the Protective Order, *see Andover Data Serv.*, 876 F.2d at 1084, the Protective Order would serve the important purposes of facilitating testimony and accommodating defendants' rights and "good cause" would exist for its issuance under Rule 26(c).

Magistrate Judge Go must therefore determine whether the defendants intend to assert their Fifth Amendment privilege

21

against self-incrimination in the absence of the Protective Order, and if so, whether the defendants are willing to voluntarily testify in reliance on the Protective Order and undertake the risk that the Protective Order might be overturned or modified at a subsequent time. *See Andover Data Serv.*, 876 F.2d at 1083-84.  Only if the answers to both of those questions are yes should the Protective Order remain in place.

Second, the court agrees with the government that the Protective Order is contrary to law because it is not narrowly tailored to achieve its goal of "minimiz[ing] the prejudice to defendants by having to choose between risking an adverse inference being drawn against them in this action and waiving their Fifth Amendment rights."  (Discovery Order at 10; *see* Gov't Mem. at 12-14.)  The Protective Order states that, with respect to the defendants, "the discovery obtained in this action may be used solely for purposes of this litigation." (Discovery Order at 9-10.)  Because the Protective Order does not differentiate between discovery sought from the defendants that may implicate their Fifth Amendment rights and the discovery sought from third parties – which has involved multiple depositions to date (Gov't Disc. Mot. at 4) – the Protective Order is overbroad and does not adequately consider "the potential for harm or prejudice to" the government.  *4003-4005 5th Ave.*, 55 F.3d at 84.  By shielding *all* discovery

obtained in this litigation from use in any other proceedings
against the defendants, the Protective Order imposes an
unnecessary burden on the government to protect the disclosure
of discovery obtained from third parties, for which the
defendants could not assert their Fifth Amendment privilege.
Therefore, to the extent the Protective Order remains in place,
it must be limited to discovery sought from and provided by the
defendants that potentially implicates their Fifth Amendment
rights, including but not limited to deposition testimony,
responses to interrogatories, and/or document productions in
response to the government's requests.[7]

In order to remedy the overbroad nature of the
Protective Order and certain ambiguities identified by the

---

[7]   In the case of *In re Grand Jury Subpoena Issued June 18, 2009*,
the Second Circuit discussed the scope of the Fifth Amendment privilege:

> The Fifth Amendment guarantees that no person "shall be compelled
> in any criminal case to be a witness against himself."  This text
> "limits the relevant category of compelled incriminating
> communications to those that are 'testimonial' in character."
> Because the act of producing documents can be both incriminating
> and testimonial -- such as when it confirms the documents'
> existence, possession, or authenticity -- a subpoenaed party may
> be able to resist production on Fifth Amendment grounds.

593 F.3d 155, 157 (2d Cir. 2010) (citations omitted); *see also United States
v. Fox*, 721 F.2d 32, 36 (2d Cir. 1983) ("[C]ompliance with a document
subpoena may require incriminating testimony in two situations: (1) if the
existence and location of the subpoenaed papers are unknown to the
government, then the taxpayer's compelled production of those documents
tacitly concedes the existence of the papers demanded and their possession or
control by the taxpayer; and (2) where the taxpayer's production of documents
may implicitly  authenticate the documents and in so doing provide a link in
the chain of incrimination." (citations omitted) (internal quotation marks
omitted) (relying on *Fisher v. United States*, 425 U.S. 391 (1976))).

government (*see* Gov't Mem. at 13-14), the Protective Order is modified as follows:

> Discovery obtained in this action from the defendants may be used solely for the purposes of this litigation or for impeachment purposes in another proceeding or in connection with a perjury prosecution arising out of the defendants' deposition testimony.  Other than for these limited purposes, discovery obtained from the defendants may not be shown, distributed, or disseminated to any other person by the government. However, the government may use information derived from this action against other individuals or entities in any other proceeding.

This modification of the Protective Order adequately addresses the potential for harm or prejudice to the government by limiting its scope to only discovery that potentially implicates the defendants' Fifth Amendment rights, while maintaining the goals of facilitating testimony and minimizing prejudice to the defendants.

**CONCLUSION**

For the foregoing reasons, the court sustains the government's objections to the Protective Order in part and overrules them in part.  The court respectfully refers the case back to Magistrate Judge Go for further proceedings and supervision of discovery, including a determination of whether the defendants intend to assert their Fifth Amendment privilege against self-incrimination in the absence of the Protective Order, and if so, whether the defendants are willing to voluntarily testify in reliance on the Protective Order and

undertake the risk that the Protective Order might be overturned or modified at a subsequent time.  If the answers to both of these questions are in the affirmative, Magistrate Judge Go shall impose the Protective Order as modified by this decision and make any other appropriate modifications after considering "how and when the privilege was invoked" by the defendants. *4003-4005 5th Ave.*, 55 F.3d at 84.  If the defendants indicate that they will continue to assert the Fifth Amendment despite the Protective Order, thus deciding not to voluntarily testify in reliance on the Protective Order, Magistrate Judge Go shall vacate the Protective Order and proceed with discovery in the normal course.  Finally, the government is directed to serve a copy of this Memorandum and Order on the *pro se* defendants and file a certificate of service by October 19, 2012.

**SO ORDERED.**

Dated:      October 17, 2012
            Brooklyn, New York


                                        /s/
                          _____
                          Hon. Kiyo A. Matsumoto
                          United States District Judge

25